John MILLER, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–9705–CR–0294.

Supreme Court of Indiana.

Nov. 18, 1999.

S. Sargent Visher, Indianapolis, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Katherine Modesitt, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant John Miller was convicted of murder for shooting another man to death. He claims he shot the victim in self-defense, but we find that there was sufficient evidence to support the jury's verdict to the contrary. We also affirm the trial court with respect to Defendant's claims as to improper instructions, erroneously excluded evidence, and sentence.

We have jurisdiction over this direct appeal because the sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

### Background

The facts most favorable to the verdict indicate that on September 16, 1995, Defendant and some acquaintances were gathered at a local gas station. After Defendant entered the gas station building, Adeba Frierson and Curtis McElwain pulled into the gas station and parked in front of Defendant's car. As Defendant exited the gas station building, Frierson spotted Defendant and said, "You act like you want to do something." Defendant responded, "What?" Defendant then pulled out a handgun and began shooting at Frierson. Defendant continued shooting as he walked toward Frierson's car, ultimately firing ten shots. One of the shots injured Frierson's right upper arm and chest while another fatal shot struck Frierson in the head. During the shooting, Frierson's car moved forward crashing into a guardrail. Defendant and his acquaintances left the scene with Defendant eventually fleeing to Owensboro, Kentucky.

On September 19, 1995, the State charged Defendant with Murder.[1] A jury found Defendant guilty of murder in June 1996. As a result, the trial court sentenced Defendant to 65 years in prison. Defendant appeals his conviction and sentence.

Additional facts will be provided as needed.

### Discussion

#### I

Defendant contends that the State failed to disprove his self-defense claim beyond a reasonable doubt, and as such, that there was insufficient evidence to support his murder conviction.

■ When a defendant challenges the State's sufficiency of the evidence to rebut a claim of self-defense, the standard of review remains the same as for any sufficiency of the evidence claim. *Sanders v. State,* 704 N.E.2d 119, 123 (Ind.1999). We neither reweigh the evidence nor assess the credibility of witnesses but look solely to the evidence most favorable to the judgment with all reasonable inferences to be drawn therefrom. *Id.; Ellis v. State,* 707 N.E.2d 797, 800 (Ind.1999); *White v. State,* 706 N.E.2d 1078, 1079 (Ind.1999); *Hurst v. State,* 699 N.E.2d 651, 654 (Ind.1998); *Jones v. State,* 689 N.E.2d 722, 724 (Ind. 1997); *Holder v. State,* 571 N.E.2d 1250, 1253 (Ind.1991). We will affirm a conviction where such evidence and reasonable inferences constitute substantial evidence of probative value sufficient to support the judgment. *Ellis,* 707 N.E.2d at 800; *Blanche v. State,* 690 N.E.2d 709, 712 (Ind. 1998); *Holder,* 571 N.E.2d at 1253.

■ Self-defense is recognized as a valid justification for an otherwise criminal act. Ind.Code § 35–41–3–2 (1993). When raised, a defendant must establish that he

---

1. Ind.Code § 35–42–1–1 (1993).

or she was in a place where he or she had the right to be, acted without fault, and was in reasonable fear or apprehension of death or great bodily harm. *See Brooks v. State,* 683 N.E.2d 574, 577 (Ind.1997); *Lilly v. State,* 506 N.E.2d 23, 24 (Ind.1987). Once a defendant claims self-defense, the State bears the burden of disproving at least one of these elements beyond a reasonable doubt for the defendant's claim to fail. *Sanders,* 704 N.E.2d at 123; *Birdsong v. State,* 685 N.E.2d 42, 45 (Ind.1997). The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief. *Lilly,* 506 N.E.2d at 24; *Davis v. State,* 456 N.E.2d 405, 408 (Ind.1983). Whether the State has met its burden is a question of fact for the jury. *Birdsong,* 685 N.E.2d at 45; *Brooks,* 683 N.E.2d at 577.

■ Self-defense, however, is unavailable to a defendant who is the initial aggressor except in circumstances not present here.[2] *Freeze v. State,* 491 N.E.2d 202, 204 (Ind.1986); *Butler v. State,* 547 N.E.2d 270, 272 (Ind.1989); *see also Davis,* 456 N.E.2d at 408 (finding that the jury could have reasonably inferred that the defendant was the initial aggressor where after the victim approached defendant, defendant quickly turned toward victim, assailed him verbally, shoved him to the floor and shot him as he fell); *Brumfield v. State,* 442 N.E.2d 973, 976 (Ind.1982) (holding that the defendant did not act in self-defense when he shot an unarmed victim, who did not appear to be threatening the defendant in any manner that would justi-

fy deadly force). The evidence most favorable to the verdict shows that it was Defendant who brandished a handgun and fired multiple shots at Frierson as he approached his vehicle. One witness testified that Defendant was smiling as he took aim at Frierson and his vehicle. Although Defendant claims he saw Frierson reach for a weapon, the State established that Frierson was unarmed at the time of the shooting.[3]

From this evidence, a jury could have reasonably rejected Defendant's self-defense claim because Defendant aggressively approached Frierson, who was unarmed and presented no immediate danger to Defendant, and purposefully fired at Frierson multiple times. Additionally, we have previously held that the firing of multiple shots undercuts a claim of self-defense. *See Birdsong,* 685 N.E.2d at 46 (viewing the fact that a defendant shot his victims several times supported the defendant's murder conviction and extinguished his self-defense claim); *Hill v. State,* 532 N.E.2d 1153, 1153 (Ind.1989) (finding sufficient evidence existed to negate the defendant's self-defense claim where the defendant shot the victim a second time after the victim fell to his hands and knees); *Schlegel v. State,* 150 N.E.2d 563, 567, 238 Ind. 374, 383 (1958) (explaining that where the first shot is fired in self-defense, a second shot is not if it is unnecessary for the defendant to defend himself where the victim fell to the ground after the first shot). Considering Defendant's aggressive behavior and that he fired multiple shots at his victim, we find that there was sufficient evidence to disprove Defendant's self-defense claim.

---

**2.** Ind.Code § 35–41–3–2 contains an exception to the general rule that a claim of self-defense is not available to an initial aggressor. A self-defense claim is available to an initial aggressor only if he or she withdraws from the encounter and communicates to the other person his or her intent to withdraw but the other person nevertheless continues or threatens to continue unlawful action. *See Id.* There is no claim that this exception applies in this case.

**3.** Defendant contends that he was acting in reasonable fear of death or great bodily harm based on (1) Frierson's reputation for violence; (2) Frierson's alleged robbery of Defendant where Frierson threatened Defendant's life and struck him with the butt of a rifle; and (3) Defendant's belief that Frierson was carrying a weapon. Appellant's Br. at 14–15.

## II

Defendant next contends that the trial court erred in refusing his tendered self-defense instructions as well as his tendered instructions on reckless homicide and criminal recklessness as lesser-included offenses of murder.

### A

■ We first address Defendant's claim that the trial court erred when it failed to include his tendered self-defense instructions. In evaluating whether a trial court erred in its refusal of a tendered instruction, we determine (1) whether the tendered instruction correctly states the law; (2) whether the record presents evidence that supports the tendered instruction; and, (3) whether another instruction covered the substance of the tendered instruction. *Ellis v. State,* 707 N.E.2d 797, 803 (Ind.1999); *Griffin v. State,* 644 N.E.2d 561, 562 (Ind.1994); *Jackson v. State,* 490 N.E.2d 1115, 1118 (Ind.1986). Defendant contends the trial court erroneously refused two of his tendered self-defense instructions; we address each separately.

### A–1

The trial court issued three self-defense instructions.[4] One of these instructions read as follows:

> One of the factors necessary to justify killing in self-defense is the bona fide fear of death or serious bodily injury. But whether or not there was such a state of mind must be found objectively in light of the surrounding circumstances, and the standard for determining that issue is the reasonableness of such belief under the circumstances.

**4.** In addition to instructing the jury on the statutory elements of self-defense, the trial court also read this self-defense instruction to the jury:

> For the purposes of the defense of self-defense in [a] Homicide prosecution, questions of existence or appearance of danger to the defendant, and necessity of defending himself, and amount of force necessary

(R. at 107.) Defendant specifically contends that this instruction placed an undue emphasis on the factor of fear disregarding other factors upon which a jury may rely to find a defendant acted in self-defense.[5] Instead, Defendant tendered the following instruction which the trial court rejected: "The danger need not be actual to support a claim of self-defense, but the belief must be in good faith and the reaction must be reasonable." (R. at 90.)

■ Considering all of the self-defense instructions issued by the trial court, we cannot conclude that the trial court's instruction placed an undue emphasis on the factor of fear. Collectively, the instructions adequately informed the jury that it was required to determine whether Defendant's fear or perception of danger was reasonable under the circumstances he faced. These instructions adequately covered the substance of Defendant's tendered instruction. We also find that the instruction given by the trial court correctly and more aptly covered the substance of the law. The trial court did not err in refusing Defendant's tendered instruction.

### A–2

■ Defendant additionally contends that the trial court erred in failing to instruct the jury that he entered a plea of "Not Guilty by Reason of Self–Defense." In support of his argument that the jury should be informed formally of his self-defense plea, Defendant tendered the following instruction: "To the Information charged against the defendant, the defendant has entered pleas of Not Guilty and Not Guilty by Reason of Self–Defense." (R. at 82.)

> must be determined from the standpoint of the accused at the time and under the existing circumstances as shown by the evidence.

(R. at 106.)

**5.** Defendant concedes that the Court of Appeals approved the use of this instruction in *Misztal v. State,* 598 N.E.2d 1119, 1124 n.6 (Ind.Ct.App.1992), *transfer denied.*

■ Although Defendant contends that he had a right to inform the jury that he was asserting a theory of self-defense, he cites no authority demonstrating that he is entitled to such an instruction. In fact, appropriate pleas in criminal proceedings only include pleas of: not guilty, guilty, and guilty but mentally ill at the time of the crime. Ind.Code § 35–35–2–1(a)(3) (1993). Accordingly, a defendant asserting self-defense is not entitled to a plea of "not guilty by reason of self-defense." Further, considering the extensive self-defense instructions given by the trial court, the jury was amply informed of and instructed on Defendant's claim of self-defense. The trial court properly refused Defendant's tendered instruction.

### B

■ We next address Defendant's claim that the trial court erred when it failed to give Defendant's tendered instructions for lesser-included offenses. When a defendant requests a lesser-included offense instruction, a trial court applies a three-part analysis: (1) determine whether the lesser-included offense is inherently included in the crime charged; if not, (2) determine whether the lesser-included offense is factually included in the crime charged; and, if either, (3) determine whether a serious evidentiary dispute exists whereby the jury could conclude that the lesser offense was committed but not the greater. *Wright v. State,* 658 N.E.2d 563, 566–67 (Ind.1995). If the final step is reached and answered affirmatively, then the requested instruction for a lesser-included offense should be given. *Id.*

■ Our standard of review is abuse of discretion when the trial court

has made a finding on the existence or lack of a serious evidentiary dispute. *Brown v. State,* 703 N.E.2d 1010, 1019 (Ind.1998); *Charlton v. State,* 702 N.E.2d 1045, 1048 (Ind.1998); *Champlain v. State,* 681 N.E.2d 696, 700 (Ind.1997). Where there is no such finding, the reviewing court makes the required determination de novo based on its own review of the evidence. *Id.; see also Charlton,* 702 N.E.2d at 1048. Here, however, neither the trial court nor Defendant addressed the existence or lack of a serious evidentiary dispute.[6] *See Brown,* 703 N.E.2d at 1019. We have held that "when the court rejects tendered instructions on lesser-included offenses on their merits, but the record provides neither a finding that there is no serious evidentiary dispute nor a specific claim from the Defendant as to the nature of that dispute, the standard of review is an abuse of discretion." *Id.* at 1020.

Defendant contends the trial court erroneously rejected his tendered lesser-included offense instructions for reckless homicide and criminal recklessness. First, the only element distinguishing reckless homicide from murder is the requisite culpability. *Compare* Ind.Code § 35–42–1–5 (1993), *with id.* § 35–42–1–1. Accordingly, reckless homicide is an inherently lesser-included offense of murder. *Sanders v. State,* 704 N.E.2d 119, 122 (Ind.1999); *McEwen v. State,* 695 N.E.2d 79, 85 (Ind.1998); *Horan v. State,* 682 N.E.2d 502, 507 (Ind.1997); *Wright,* 658 N.E.2d at 567.

■ Similarly, the only element distinguishing the crimes of criminal recklessness and murder is culpability. *Compare* Ind.Code § 35–42–2–2(c)(1) (1993), *with id.* § 35–42–1–1; *see also Young v. State,*

---

**6.** After a careful review of the record, we have concluded that neither the trial court nor Defendant identified a serious evidentiary dispute as required by *Wright.* Defendant merely made reference to the instruction without pointing to relevant evidence in support of his presumed argument that a serious evidentiary dispute existed. Defense counsel made an

attempt at the end of the trial court's hearing to record his objections; however, such objections must be made "at the time the trial court rules on the tendered instruction." *Brown,* 703 N.E.2d at 1019. Accordingly, we review the rejected tendered instructions for an abuse of discretion.

699 N.E.2d 252, 257 (Ind.1998) ("It is the intent element that distinguishes ... criminal recklessness from murder." (quoting *Simpson v. State,* 628 N.E.2d 1215, 1221 (Ind.Ct.App.1994), *transfer denied.*)). Criminal recklessness occurs when a person recklessly, knowingly, or intentionally "inflicts serious bodily injury on another person." *Id.* § 35–42–2–2(c)(1). "Serious bodily injury" is defined as a bodily injury that "creates a substantial risk of death." *Id.* § 35–41–1–25. In effect, criminal recklessness occurs when there is a (1) reckless, knowing, or intentional (2) infliction of a (3) serious bodily injury—including (4) death on another person. *Accord Comer v. State,* 428 N.E.2d 48, 54 (Ind.Ct.App. 1981). Murder occurs when a person (1) knowingly or intentionally (2) kills (3) another human being. Ind.Code § 35–42–1–1 (1993). Culpability remains the sole distinguishing element, and as such, makes criminal recklessness an inherently lesser-included offense of murder. *Accord Taylor v. State,* 587 N.E.2d 1293, 1303–04 (Ind. 1992) (Where defendant was charged with murder, the trial court properly refused to instruct the jury "regarding the lesser-included offense of ... criminal recklessness.").

 After determining that a tendered instruction covers an inherently lesser-included offense, a court must then determine whether a serious evidentiary dispute existed whereby a jury could conclude that a defendant committed the lesser but not the greater offense.[7] We conclude that the trial court did not abuse its discretion when it rejected both of Defendant's tendered instructions. Defendant fired a total of ten shots at Frierson, one of which struck Frierson in the head. The trial court could have reasonably concluded that there was no serious evidentiary dispute as to whether Defendant knowingly killed Frierson[8]—that is, that firing a gun repeatedly while advancing toward the victim sitting in his car would result in a high probability of death. *See Sanders,* 704 N.E.2d at 122–23 (No serious evidentiary dispute existed where the defendant killed the victim by firing a handgun directly at the victim at close range.); *Olive v. State,* 696 N.E.2d 381, 382 (Ind.1998) (Defendant knowingly killed his victim when he fired a handgun through the window of a moving car.); *Champlain,* 681 N.E.2d at 703 (Defendant knowingly killed victim when he fired weapon into a trailer home at close range and was aware that the victim was inside.); *Owens v. State,* 544 N.E.2d 1375, 1377 (Ind.1989) ("Firing a gun in the direction of an individual [seated in a vehicle] is substantial evidence from which a jury may infer intent to kill.").

### III

Defendant next contends that the trial court improperly excluded evidence concerning Frierson's propensity for violence. Defendant argues that on three separate occasions the trial court improperly excluded evidence.

### A

 First, Defendant contends that the trial court erred when it excluded testimony which was offered to support his self-defense claim that he had a reasonable fear of Frierson. The trial court, however, found the testimony was inadmissible hearsay. Hearsay "is a statement, other

---

7. Where a trial court has rejected a tendered instruction on its merits and the record provides no finding that there is no serious evidentiary dispute, we presume the trial court followed *Wright* and denied the lesser-included offense instructions due to the lack of a serious evidentiary dispute. *Brown,* 703 N.E.2d at 1019 (citing *Bishop v. Sanders,* 624 N.E.2d 64, 66 (Ind.Ct.App.1993), *transfer denied.*).

8. While the crime of murder requires that Defendant "knowingly or intentionally" killed another human being, Ind.Code § 35–42–1–1 (1993), the information alleged that Defendant "knowingly" killed Frierson. Therefore, our discussion of murder is limited to this level of culpability. A person knowingly kills another human being when "he is aware of a high probability" that he is engaged in the act of killing. *Id.* § 35–41–2–2.

than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). When a statement has been excluded from evidence that was not in fact hearsay, this Court will review the trial court's decision under a harmless error analysis. Ind. Trial Rule 61; *see also Sylvester v. State,* 698 N.E.2d 1126, 1129 (Ind.1998), *reh'g denied; Isaacs v. State,* 659 N.E.2d 1036, 1038 (Ind.1995), *cert. denied,* 519 U.S. 879, 117 S.Ct. 205, 136 L.Ed.2d 140 (1996). " 'An error will be found harmless if its probable impact on the jury, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties' " *Sylvester,* 698 N.E.2d at 1129 (quoting *Fleener v. State,* 656 N.E.2d 1140, 1142 (Ind.1995)).

■ Defendant asserts that on two occasions the trial court erroneously excluded statements on the basis of hearsay. On one occasion, Jamall Jackson attempted to testify regarding his conversations with Defendant concerning Frierson's propensity for violence. Defense witness Jackson testified as follows:

> Q: Did you have any conversations with John Miller, there at your home, about the circumstances that you knew him to be in?
>
> A: Yes.
>
> Q: Okay. And what, if anything, did you say to him, uh, about that?
>
> A: I just . . .
>
> [State]: Judge, I'm going to object to that, too. That's hearsay, as to what he said.
>
> The Court: Sustained.

(R. at 572.) It appears that defense counsel was attempting to have Jackson testify as to a statement Jackson made other than while testifying at trial. In the absence of any showing that the statement was being offered for a reason other than to prove the truth of the matter asserted (or that it was not hearsay under Evid. R. 801(d) or an exception to the hearsay rule under Evid. R. 803), the trial court properly sustained the objection.

The other occasion is more problematic. In it, Defendant attempted to testify that some of his friends had made him aware of Frierson's threatening remarks against Defendant in the days leading up to the instant offense. The trial court, however, prevented Defendant from testifying as to what he had learned finding any such remarks inadmissible hearsay.[9]

■ Here, the evidence was not offered as proof of the matter asserted but to describe the circumstances under which Defendant operated and which resulted in Frierson's death. Where the issue of self-defense is raised, evidence of prior threats made by the victim is admissible for the purpose of showing his intention, motive, disposition, or state of mind toward the defendant. *Nuss v. State,* 328 N.E.2d 747, 754, 164 Ind.App. 396, 407 (Ind.Ct.App. 1975); *see also Shepard v. State,* 451 N.E.2d 1118, 1121 (Ind.Ct.App.1983) (Threats were not offered for the truth of the matter asserted, but to explain the defendant's state of mind as it related to his self-defense claim.); *cf. Davis v. State,* 481 N.E.2d 387, 390 (Ind.1985) (Where victim made no threat against defendant prior to the altercation, evidence that victim retrieved a gun from a neighbor's

9. Defendant testified as follows:
> Q: Had [Frierson] ever threatened you from the time of the robbery forward, until September 16 of '95?
>
> A. They said he did. He was . . .
>
> Q: What do you mean, they said he did . . . who said that?
>
> A: He was telling like Jonal, Jonal Reed.
>
> [State]: Object to hearsay, Judge.
>
> The Court: Sustained.
>
> [Defense Counsel]: Withdraw it.
>
> Q: Did other people tell you that he was going to get you?
>
> A: Yes, sir.
>
> [State]: Objection; hearsay.
>
> The Court: Sustained.
>
> [Defense Counsel]: Your Honor, it goes to the state of mind of the defendant.
>
> The Court: I sustained the objection.

(R. at 661–62.)

house 30 minutes before altercation was inadmissible.). Additionally, "[s]tatements made by a victim which are offered to show the reasons why a person acted in the way he or she did are not hearsay." *Sylvester*, 698 N.E.2d at 1129; *see also Isaacs*, 659 N.E.2d at 1038–39 (Victim's responses during an encounter were as pertinent to a self-defense claim as defendant's statements to the victim and therefore did not constitute inadmissible hearsay.). As such, it was error to exclude such testimony as violative of the hearsay rule.

■ Although we find the trial court erroneously excluded Defendant's testimony, we find the error harmless. Defendant established that Frierson had a reputation for violence in the community. He also introduced evidence regarding his perceived fear of Frierson: he described Frierson's violent robbery of him including being struck with the butt of Frierson's assault rifle and the threats made on his life during the encounter; he expressed his general fear of being shot by Frierson; he was under the impression that Frierson was armed with a weapon that day; and, he testified that he was frightened when he saw Frierson at the gas station. Accordingly, in light of all the evidence, the exclusion had a sufficiently minor impact on the jury so as not to affect the substantial rights of Defendant.

### B

■ Defendant additionally contends that the trial court erroneously ruled that Jamall Jackson's testimony concerning conversations with Defendant was irrelevant. After testifying that Frierson had a reputation for violence in the community, Jackson offered the following testimony:

Q: Did you ever tell [Defendant] that he should, uh, watch himself around [Frierson]?

A: Yeah ...

[State]: Objection, Judge.

A: ... plenty of times.

[State]: Objection.

The Court: Just a minute, Mr. Jackson. What's the basis for your objection?

[State]: It's irrelevant what he told [Defendant] as to whether or not he was afraid of [Frierson].

The Court: Sustained.

(R. at 569–70.) When a defendant asserts a self-defense claim, reports or statements that generate fear or concern of death or bodily injury are generally admissible. However, these facts must relate to the *defendant's* fear of the victim. *See Russell v. State*, 577 N.E.2d 567, 568 (Ind.1991) ("Any fact which reasonably would place a person in fear or apprehension of death or great bodily injury is admissible."); *see also Shepard*, 451 N.E.2d at 1120. In the absence of any showing that Jackson's testimony was relevant to Defendant's fear of the victim, we cannot conclude whether the trial erred in excluding it or not. And even if the trial court erroneously excluded the testimony, it was harmless error. Jackson's testimony regarding Frierson's violent character was admitted. As such, in light of all of the evidence, it would have had a sufficiently minor impact on the jury so as not to affect the substantial rights of Defendant.

### IV

At the time this crime was committed, the presumptive sentence for murder was 55 years. Ind.Code § 35–50–2–3 (Supp. 1995). Due to aggravating circumstances, the trial court imposed the maximum sentence available by applying a ten-year enhancement to the presumptive sentence. Defendant contends that his 65 year sentence was manifestly unreasonable.

■ In general, the legislature has prescribed standard sentences for each crime, allowing the sentencing court limited discretion to either enhance each sentence to reflect aggravating circumstances or reduce the sentence to reflect mitigat-

ing circumstances. When the trial court imposes a sentence other than the presumptive sentence, this Court will examine the record to insure that the trial court explained its reasons for selecting the sentence it imposed. *Archer v. State*, 689 N.E.2d 678, 683 (Ind.1997) (citing *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind. 1986), *reh'g denied*). The trial court's statement of reasons must include the following components: (1) identification of all significant aggravating and mitigating circumstances; (2) the specific facts and reasons that lead the court to find the existence of each such circumstance; and, (3) an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *Mitchem v. State*, 685 N.E.2d 671, 678 (Ind.1997) (citing *Jones v. State*, 675 N.E.2d 1084, 1086 (Ind. 1996)).

Defendant contends that his sentence is manifestly unreasonable because the trial court improperly applied aggravating circumstances and failed to consider mitigating circumstances.[10] The trial court explicitly identified three aggravating circumstances upon which it relied to enhance Defendant's sentence: (1) Defendant's criminal history, (2) the victim's

representative's recommendation, and (3) that the imposition of a reduced sentence would depreciate the seriousness of the crime.[11] Although not distinctly outlined in the sentencing statement, the court also emphasized particularly disturbing facts about the case during the sentencing hearing: (1) Defendant walked toward victim as he shot his handgun, (2) the victim was shot ten times, (3) the victim was shot in the head, and (4) the victim was shot while sitting in his car. This leads us to conclude that the trial court also relied on the nature and circumstances of the crime as an aggravating circumstance to justify an enhanced sentence. *Mitchem*, 685 N.E.2d at 680 (determining that the nature and circumstances of a crime may be considered an aggravating factor); *see also Scheckel v. State*, 620 N.E.2d 681, 684 (Ind. 1993); *Concepcion v. State*, 567 N.E.2d 784, 791 (Ind.1991); *Brown v. State*, 698 N.E.2d 779, 781 (Ind.1998) (Although the trial court failed to neatly package aggravating circumstances in the sentencing order, the record demonstrated that the trial court considered the circumstances of the crime in enhancing the sentence.). While we do find the application of some of the trial court's aggravating circumstances problematic,[12] we do not find that these

---

**10.** Defendant also contends that in light of other sentences meted out to various defendants in other cases, his sentence is manifestly unreasonable. However, the discretionary power granted to us by the Indiana Constitution to review and revise sentences does not include a comparative review of sentences. *Bouye v. State*, 699 N.E.2d 620, 629 (Ind. 1998); *Willoughby v. State*, 660 N.E.2d 570, 584 (Ind.1996).

**11.** In response to the State's request that the trial court recall that ten shell casings were found at the scene of the crime, the trial court rendered the following sentencing statement: The Court also recalls the pictures of Mr. Frierson, which were pictures of a young man, shot in the head, still sitting in his car. I feel sorry for Mr. Miller's family, also, but you are asking me to give Mr. Miller some kind of break ... that's what it sounds like ... Nobody gave Mr. Frierson a break. There may have been words exchanged ... I don't know ... but then he was ... he

was shot, and now his family is without him. The Court considers the defendant's criminal history, even though it is not substantial, it is somewhat of an aggravating factor. The Court also considers, uh, what the victim's representatives recommend, and the Court also considers that imposition of a reduced sentence would depreciate the seriousness of the offense. The Court understands the argument that defense counsel has made regarding the mitigating factors, but finds that the aggravating factors outweigh any mitigating factors, and sentences the defendant to sixty-five (65) years in the Department of Correction[ ]. (R. at 781–83.)

**12.** One aggravating factor upon which the trial court relied, "that imposition of a reduced sentence would depreciate the seriousness of the offense," (R. at 782–83), was improperly applied to justify enhancement of Defendant's sentence. Ind.Code § 35–38–1–7.1(b)(4) (Supp.1995). We have repeatedly

deficiencies warrant a finding that the sentence was manifestly unreasonable.

Defendant also contends that the trial court failed to consider his identified mitigating circumstances when imposing the sentence.[13] The record, however, reveals that the trial court did consider Defendant's mitigating circumstances but found that the aggravating circumstances outweighed the mitigating circumstances. A trial court "need not credit mitigating factors in the same manner as would the [defendant], nor explain why it found a particular circumstance insufficiently mitigating." *Coleman v. State,* 694 N.E.2d 269, 279 (Ind.1998); *Brown,* 698 N.E.2d at 782–83; *Widener v. State,* 659 N.E.2d 529, 533–34 (Ind.1995).

Considering Defendant's criminal history coupled with the trial court's emphasis on the nature and circumstance of the crime as aggravating circumstances, we find the sentence imposed by the trial court was reasonable in light of the nature of the offense and the character of the offender.

### Conclusion

We affirm Defendant's conviction and sentence.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

---

held that this aggravating circumstance serves to support a trial court's refusal to reduce the presumptive sentence. *Hollins v. State,* 679 N.E.2d 1305, 1308 (Ind.1997); *Mayberry v. State,* 670 N.E.2d 1262, 1270 (Ind.1996); *Ector v. State,* 639 N.E.2d 1014, 1015 (Ind.1994); *Evans v. State,* 497 N.E.2d 919, 923 (Ind.1986). There is nothing in the record indicating that the trial court was considering a reduced sentence. Therefore, the use of this aggravating circumstance was improper.

**13.** "John Miller is 22 years of age.... He worked and helped provide for his mother. He went to school. He maintained a C-average at Broad Ripple. He went to an additional school until finances would no longer permit him to do so. He ran out of his summer job, and he went to work for Temporary Services." (R. at 764.)