**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PATRICIA CARESS McMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONATO LUNA-QUINTERO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1110-CR-931 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1006-MR-050581

**June 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Donato Luna-Quintero ("Luna-Quintero") appeals his conviction for Murder, a felony,[1] presenting the sole issue of whether the evidence is sufficient to support his conviction. We affirm.

## Facts and Procedural History

In June of 2010, Luna-Quintero's girlfriend, Randi Arthur ("Arthur"), hosted a party to celebrate moving into her new apartment in Indianapolis. One of the guests, Octavio Velazquez ("Velazquez"), repeatedly asked Luna-Quintero his name but Luna-Quintero did not respond. This upset Velazquez and his friends, and they began surrounding Luna-Quintero and posturing as if they were ready to fight. Luna-Quintero's brother, Gustavo Luna-Quintero ("Gustavo"), exclaimed, "You're not going to mess with my brother," and Velazquez responded, "You're not about to jump my homeboy." (Tr. 103.) Arthur stepped in and made Velazquez and his friends leave.

After the party, Mary Johnson ("Johnson"), who was then dating Gustavo, was with the Luna-Quintero brothers on separate occasions when the brothers threatened Velazquez. According to Johnson, when she mentioned Velazquez, Gustavo would threaten to start a fight while Luna-Quintero claimed, "I'm going to shoot your homeboy." (Tr. 106.)

During the early morning hours of June 26, 2011, Johnson and a friend were sitting outside Johnson's apartment talking to friends when several people, including Velazquez,

---

[1] Ind. Code § 35-42-1-1. Luna-Quintero does not challenge his conviction for Carrying a Handgun without a License, a Class A misdemeanor. Ind. Code § 35-47-2-1.

arrived to visit Johnson's upstairs neighbor. Approximately ten minutes later, the Luna-Quintero brothers drove up, exited their vehicle, and approached Velazquez. Gustavo questioned, "Do you remember what you said to me at that party?" (Tr. 152.) Gustavo lifted up his left hand and Luna-Quintero "came around his brother and shot [Velazquez]." (Tr. 152.)

Velazquez, wounded by several shots, fell onto a porch. Luna-Quintero briefly chased Velazquez's brother, but then ceased the pursuit, returned to a fallen Velazquez, and fired another shot. The brothers returned to their vehicle and began to drive away. They soon encountered Arthur, who was driving into the apartment complex. Luna-Quintero got out of his vehicle and told Arthur, "I just shot your little friend Changito ("monkey"). Yeah, I shot him. So how do you like that one?" (Tr. 92.) He returned to the vehicle and the brothers drove away.

Meanwhile, neighbors attempted to render assistance to Velazquez. He had received four gunshot wounds, one in the head, one in the upper right chest, one in the lower right chest, and one in the right thigh. The wounds proved fatal.

On June 28, 2010, Luna-Quintero and Gustavo were jointly charged with Murder and Carrying a Handgun without a License. Luna-Quintero waived his right to a jury trial and, on August 17, 2011, he appeared for a trial separate from his brother. At the conclusion of the bench trial, Luna-Quintero was found guilty as charged. He received a fifty-year aggregate sentence. He now appeals.

## Discussion and Decision

Luna-Quintero claims that the evidence is insufficient to support his conviction. More specifically, he contends that the State failed to negate his claim of self-defense.

To convict Luna-Quintero of Murder, the State was required to establish that he knowingly or intentionally killed Velasquez. When reviewing a claim of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses, but will consider only the probative evidence and reasonable inferences supporting the judgment. Sargent v. State, 875 N.E.2d 762, 767 (Ind. Ct. App. 2007). We will affirm the conviction unless no reasonable trier of fact could find the elements of the crime proven beyond a reasonable doubt. Id.

A valid claim of self-defense is legal justification for an otherwise criminal act. Birdsong v. State, 685 N.E.2d 42, 45 (Ind. 1997). "A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2.

When a defendant raises a claim of self-defense, he is required to show three facts: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or great bodily harm. Wallace v. State, 725 N.E.2d 837, 840 (Ind. 2000). Once a defendant claims self-defense, the State bears the burden of disproving at least one of these elements beyond a reasonable doubt for the defendant's claim to fail. Miller v. State, 720 N.E.2d 696, 700 (Ind. 1999). The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-

4

defense, or by simply relying upon the sufficiency of its evidence in chief. Id. Whether the State has met its burden is a question of fact for the fact-finder. Id. Self-defense is generally unavailable to a defendant who is the initial aggressor. Id.

The evidence negating Luna-Quintero's claim of self-defense is as follows. In the week prior to Velazquez's death, Luna-Quintero had, at least twice, threatened to shoot Velazquez. When the brothers confronted Velazquez on June 26, 2011, Velazquez was unarmed. He was holding hands with his girlfriend, Anaeliza Armenta; his left hand held a beer. Gustavo verbally challenged Velazquez, but Luna-Quintero "didn't give [Velazquez] a chance to say anything" before opening fire. (Tr. 170.) Luna-Quintero fired multiple shots into Velazquez. The final shot was fired as Velazquez lay helpless on the porch.

Firing multiple shots undercuts a claim of self-defense. Randolph v. State, 755 N.E.2d 572, 575 (Ind. 2001). Accordingly, the State presented sufficient evidence from which the fact-finder could conclude that Luna-Quintero did not act in self-defense.

Affirmed.

ROBB, C.J., and MATHIAS, J., concur.