## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 20 2017, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ashley Nicole Nelson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 20, 2017<br><br>Court of Appeals Case No.<br>49A02-1609-CR-2183<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Angela Dow Davis, Judge<br><br>Trial Court Cause No.<br>49G16-1604-F6-12643 |

**Barnes, Judge.**

## Case Summary

[1] Ashley Nelson appeals her conviction for Class B misdemeanor battery. We affirm.

## Issue

[2] Nelson raises one issue, which we restate as whether there was sufficient evidence to find that the State rebutted Nelson's self-defense claim.

## Facts

[3] On April 5, 2016, Nelson was charged with Level 6 felony domestic battery and Class A misdemeanor battery resulting in bodily injury, pursuant to a physical altercation between Nelson and her husband, T.M. On August 19, 2016, Nelson filed a motion to exclude the testimony of T.M. because he had failed twice to appear for a recorded statement. The trial court granted that motion on August 22, 2016. On August 26, 2016, the State filed a motion to amend the charging information stating that, it did not have enough evidence to proceed with counts I and II, and instead wished to amend the charge to Class B misdemeanor battery. The trial court granted this motion on August 29, 2016.

[4] A jury trial began on August 31, 2016. During the trial, Officer Samuel Willford testified that on the night of March 31, 2016, he responded to a domestic disturbance call on North Olney Street in Indianapolis. Nelson later testified that this was the address of the house where she and T.M. had been living at the time. Officer Willford testified that he arrived about two or three minutes after the call and that, when he arrived at the house, he saw T.M.

running out of the house and a vacuum cleaner thrown after him. Officer Willford then testified that he saw Nelson come out the front door and kick T.M. in his back. Officer Willford also stated that neither Nelson nor T.M. noticed that he was on the scene when he first arrived, but once T.M. noticed Officer Willford's presence, T.M. called out to him, stating that he was in pain. Officer Willford testified that both T.M. and Nelson were yelling and screaming as he approached the house. Officer Willford also testified that he did not see any injuries on T.M. and did not take any pictures of injuries. Officer Willford testified that he had spoken to Nelson the night of the incident and that she did not inform him that T.M. physically touched her in any way.

[5] Nelson testified that the night of March 31, 2016 was "very bad." Tr. p. 68. Nelson stated, "[T.M.] got very rude and mad at how his life was going." *Id.* Nelson claimed they "had a physical conflict, like fussin'." *Id.* at 69. She stated that he tried to choke her and that he grabbed her head. Nelson alleged that her eyes rolled in the back of her head when T.M. choked her and that T.M. had pulled some of her braids out. Nelson testified that she asked T.M. to leave but that "he turned back around and [they] was tusslin'. By the time he was walkin' out the door I done already threw the vacuum cleaner." *Id.* at 70. Nelson denied kicking or punching T.M. Nelson claimed that she told Officer Willford that T.M. physically assaulted her. Nelson also testified that she

believed T.M. was on "piff" because "his eyes were dilated and he was sweating real bad."[1]  *Id.* at 100.

[6]  The jury found Nelson guilty of Class B misdemeanor battery.  She now appeals.

## Analysis

[7]  Nelson argues that the State failed to disprove her claim of self-defense beyond a reasonable doubt.  When reviewing a challenge to sufficiency of evidence to rebut a claim of self-defense, the standard is the same for any sufficiency of evidence claim.  *Wilson v. State,* 770 N.E.2d 799, 801 (Ind. 2002).  We neither reweigh the evidence nor judge the credibility of witnesses.  *Id.*  If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed.  *Id.*  This court considers only the evidence most favorable to the verdict and all reasonable inferences therefrom. *Id.*

[8]  "A valid claim of self-defense is a legal justification for an otherwise criminal act."  *Coleman v. State,* 946 N.E.2d 1160, 1165 (Ind. 2011).  Indiana Code Section 35-41-3-2 (c) provides in part, "A person is justified in using reasonable force against any other person to protect the person or third person from what the person reasonably believes to be the imminent use of unlawful force."  In order to prevail on a claim of self-defense, a defendant must show: (1) he was in

---

[1] T.M. did not testify.

a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or great bodily harm. *Cole v. State,* 28 N.E.3d 1126, 1137 (Ind. Ct. App. 2015). "When a case does not involve deadly force, a defendant must only show that he was protecting himself from what he reasonably believed to be the imminent use of unlawful force." *Dixson v. State,* 22 N.E.3d 836, 839 (Ind. Ct. App. 2014) *trans. denied.* An initial aggressor or a mutual combatant must withdraw from the encounter and communicate the intent to do so to the other person before she may claim self-defense. *Wilson,* 770 N.E.2d at 801. Indiana Code Section 35-41-3-2(g) provides in part that "a person is not justified in using force, if: … (3) the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action." A self-defense claim fails if a defendant continues to use force against a retreating victim. *See Wilson,* 770 N.E.2d at 801. "When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements." *Id.* at 800. "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Miller v. State,* 720 N.E.2d 696, 700 (Ind. 1999). Whether the State has met its burden is a question of fact for the fact-finder. *Id.* The force used in self-defense must be proportionate to the requirements of the situation. *Weedman v. State,* 21 N.E.3d 873, 892 (Ind. Ct. App. 2014) *trans. denied.* A claim of self-defense will fail if the person uses more

force than is reasonably necessary under the circumstances. *Id.* Where a person has used more force than necessary, the right to self-defense is extinguished. *Id.* Even if Nelson was not the initial aggressor, self-defense generally does not shield an accused from liability if he or she participated willingly in the violence. *Wilson,* 770 N.E.2d at 800.

[9] Nelson contends that she did not provoke the altercation that occurred between her and T.M. Nelson argues that Officer Willford only observed "a small portion of the altercation between Nelson and [T.M.], including [T.M.] being injured by either the vacuum cleaner or a kick." Appellant's Br. p. 11. Nelson contends that because T.M. had choked her and pulled her hair, she "had a reasonable fear of great bodily harm when she attempted to get [T.M.] to leave the house more quickly by pushing the vacuum after him." Appellant's Br. p. 10. Although Nelson admits that Officer Willford's observation was sufficient to establish that a battery occurred, she argues, "The State did not refute [her] claim of self-defense." *Id.* The evidence presented by the State shows otherwise.

[10] The State presented testimony from Officer Willford disputing Nelson's testimony. Officer Willford stated that Nelson did not tell him about the events that occurred prior to his arrival and he only testified to what he observed. Even if the jury accepted Nelson's reasoning for using the vacuum to make T.M. leave more quickly, both she and Officer Willford testified that T.M. was leaving the house when the vacuum was used. Additionally, Officer Willford testified that he observed Nelson kick T.M. in the back.

[11] Based on the evidence presented, a reasonable fact-finder could conclude that by throwing or pushing the vacuum after T.M., and kicking him with his back turned after he left the house, Nelson's privilege of self-defense had already expired, not only because the perceived threat was no longer imminent, but because she used more force than was reasonably necessary. The jury was not obligated to believe Nelson's claim of self-defense in light of evidence to the contrary. *See McCullough v. State,* 985 N.E.2d 1135, 1139 (Ind. Ct. App. 2013) *trans. denied*.

## Conclusion

[12] There is sufficient evidence to support the jury's finding that the State rebutted Nelson's self-defense claim beyond a reasonable doubt and to support Nelson's conviction for battery as a Class B misdemeanor. We affirm.

[13] Affirmed.

Baker, J., and Crone, J., concur.