## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 26 2018, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Kelly A. Loy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Amanda Jo Baker,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | June 26, 2018<br><br>Court of Appeals Case No.<br>42A01-1710-CR-2510<br><br>Appeal from the Knox Superior Court<br><br>The Honorable Gara U. Lee, Judge<br><br>Trial Court Cause No.<br>42D01-1512-F6-355 |

**Baker, Judge.**

[1] Amanda Jo Baker appeals her conviction for Level 6 Felony Domestic Battery,[1] arguing that the evidence is insufficient to support the conviction. Finding the evidence sufficient, we affirm.

## Facts

[2] On November 16, 2015, Baker had been on the phone with the gas company trying to get the gas turned on in the home she shared with her then-husband, N.B.; she got into an argument with the gas company representative. N.B. confronted Baker about how she was behaving on the phone. N.B. grabbed the phone out of her hand and began pushing Baker, who pushed back, and they then engaged in a mutual altercation, pushing and hitting each other. At one point, Baker pushed N.B., who was crying, to the floor. At another point, N.B. grabbed Baker by the hair and tried to drag her out of the house. He then disengaged and went to the basement because he was afraid he was going to hurt Baker. Baker followed him into the basement and hit him. Baker then left the home, and N.B. called the police.

[3] Vincennes City Police Officer Jordan Christie responded to the dispatch. He found the front door open and saw N.B. signaling him to come into the home. Officer Christie observed a table and a broken chair in a dining area and an infant, later determined to be Baker and N.B.'s eight-month-old daughter,

---

[1] Ind. Code § 35-42-2-1.3(a).

sitting on the floor in the living room. N.B. told the officer that Baker had assaulted him and that he was in pain.

[4] About ten minutes later, Baker returned to the residence with her sister. Baker was angry and had an abrasion on her nose. Officer Christie stepped onto the front porch with Baker and asked her to explain what had happened. She said that she and N.B. had an argument that became physical and "they were pushing and shoving one another" and hurting each other. Tr. Vol. II p. 154, 159-60, 190. She admitted that at one point she shoved N.B. to the ground and that he was crying, the pushing and shoving began again, and she grabbed him by the back of the neck and they fell to the ground, breaking a chair. Baker admitted that their child was present during the altercation. Baker did not tell the officer that she acted out of self-defense, nor did she act afraid or have difficulty approaching N.B. once she returned to the house.

[5] Officer Christie observed that Baker's version of events was essentially identical to what N.B. had told him earlier. Officer Christie then arrested both Baker and N.B. At that point, Baker told Officer Christie that the whole encounter was her fault and asked if he could take only her to jail.

[6] On December 4, 2015, the State charged Baker with Level 6 felony domestic battery. By the time of Baker's September 19, 2017, jury trial, N.B. had pleaded guilty to battery for his role in the altercation; Baker and N.B. had finalized their divorce; and the Department of Child Services had custody of their daughter pursuant to a Child in Need of Services action. At trial, Officer

Christie, Baker, and N.B. testified. The jury found Baker guilty as charged. On October 5, 2017, the trial court imposed a thirty-month sentence, with thirty-eight days executed and the remainder suspended to probation on home detention. Baker now appeals.

## Discussion and Decision

[7] Baker argues that the evidence is insufficient to support her conviction. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction and will neither assess witness credibility nor reweigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

[8] To convict Baker of Level 6 felony domestic battery, the State was required to prove beyond a reasonable doubt that Baker knowingly or intentionally touched N.B. in a rude, insolent, or angry manner in the presence of a child less than sixteen years of age. I.C. § 35-42-2-1.3. On appeal, Baker does not contend that the evidence fails to support the statutory elements. Instead, she argues that the State failed to disprove her claim of self-defense.

[9] To prevail on a claim of self-defense, a defendant must show that she (1) was in a place where she had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002); *see also* Ind. Code § 35-

41-3-2. When a self-defense claim is raised and finds support in the evidence, the State bears the burden of negating at least one of the necessary elements beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 800. The State may meet its burden by offering evidence directly rebutting the defense, affirmatively showing that the defendant did not act in self-defense, or by relying on the sufficiency of the evidence from its case-in-chief. *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999). If a defendant is convicted despite a claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 801.

[10] In this case, the jury had conflicting evidence to weigh and witnesses' credibility to assess. Specifically, in relevant part, the following testimony was before the jury:

- Officer Christie testified that at the scene, N.B. made a battery complaint against Baker. Tr. Vol. II p. 152-53.
- When Officer Christie first saw Baker, she appeared angry. She did not ask for any kind of help, nor did she make any claims about defending herself. *Id.* at 153-54, 155.
- Baker told Officer Christie that she and N.B. had pushed and shoved one another. At one point, she stated that she had shoved him to the ground and that he was crying. She also grabbed him by the back of the neck, causing them both to fall to the ground and break a chair. *Id.* at 154.
- Baker provided her statement to Officer Christie without N.B. present, and she had not been present when N.B. gave his version of events to the officer. Both initial statements were consistent with one another. *Id.* at 155, 170.
- After Officer Christie arrested both of them, Baker claimed that the altercation was all her fault and that N.B. "didn't do anything[.]" *Id.* at 157. Officer Christie did not believe that to be true.

- At one point, Baker told Officer Christie that the injury to her nose occurred when she was getting in or out of her sister's car. Her sister told the officer that Baker had the injury at the time she arrived at her sister's house. Officer Christie concluded that Baker was lying. *Id.* at 166.
- N.B. testified that he grabbed the phone out of Baker's hand and they then began pushing, hitting, and grabbing each other. At one point, she pushed him down as he was crying. *Id.* at 190-91.
- N.B. was worried he would hurt Baker, so he left the room and went to the basement. She followed him and began hitting him. *Id.* at 191.
- Baker testified that N.B. ripped the phone out of her hand and pushed her against a wall. She pushed him back to try to get around him, and he grabbed her by the hair and threw her to the floor, punching her. *Id.* at 219-20. At some point, N.B. dragged her by the hair to get her out of the house. He also kicked her. Baker then went to the basement and he followed her, pushing her against a wall. She then left the home and went to her sister's house. *Id.* at 221-22.
- Baker testified that when she pushed N.B., she was acting in self-defense. *Id.* at 234, 243-44.
- Baker denied telling Officer Christie that she had pushed N.B. to the ground, that she had grabbed him by the neck, or that the altercation was mutual. *Id.* at 240-41. In fact, she denied saying anything at all to Officer Christie, claiming that she had denied the whole incident and merely stated that nothing had happened. *Id.* at 246-48.
- She stated that N.B. was lying when he said that he went to the basement first and she followed him. *Id.* at 239.
- Baker was pregnant at the time of trial and denied that N.B. was the father. She also denied telling anyone else that N.B. was the father. *Id.* at 245. Her sister then testified and said that Baker had told her that N.B. was the father. Tr. Vol. III p. 9.
- Baker's sister testified that when Baker arrived at her house, she provided a version of events that matched what N.B. reported to Officer Christie. *Id.* at 7-8.
- Officer Christie was re-called to the stand and stated that Baker's testimony did not match what she told him at the scene. *Id.* at 16-17. He also confirmed that Baker did not tell him that she was in fear of being

seriously injured, nor did she claim to have acted in self-defense. *Id.* at 18.

In sum, the jury had multiple versions of the altercation to consider. Indeed, Baker herself provided multiple versions at the scene. Moreover, there are multiple instances in the record of Baker appearing to be dishonest. A reasonable jury could have concluded, based on this evidence, that Baker participated willingly in the violence, that she had at least one opportunity to disengage from the fighting but instead chose to pursue N.B., and that she did not have a reasonable fear of death or great bodily harm. *See Wilson*, 770 N.E.2d at 801 (holding that a "mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense").

[11] Baker is correct that there is some evidence in the record supporting her claim of self-defense; primarily, it is her own testimony. But there is also evidence in the record supporting the State's argument that Baker did not, in fact, act in self-defense. Baker's argument amounts to a request that we reweigh the evidence and second-guess the jury's assessment of witnesses. We decline to do so. The evidence is sufficient.

[12] The judgment of the trial court is affirmed.

Kirsch, J., and Bradford, J., concur.