## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2018, 10:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Timothy J. Burns | Curtis T. Hill, Jr. |
| Indianapolis, Indiana | Attorney General of Indiana |
| | James B. Martin |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lakila Jackson, | December 21, 2018 |
| *Appellant-Defendant,* | Court of Appeals Case No. 18A-CR-823 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, | The Honorable Clayton A. Graham, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 49G07-1709-CM-37403 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Lakila Jackson (Jackson), appeals her conviction for battery, Class A misdemeanor, Ind. Code § 35-42-2-1(d)(1).

We affirm.

# ISSUE

Jackson presents one issue on appeal, which we restate as: Whether the evidence was sufficient to sustain her conviction for battery and rebut her claim of self-defense.

# FACTS AND PROCEDURAL HISTORY

In August of 2017, Charniqua Alexander (Alexander) lived in an apartment complex in Indianapolis, Indiana. Alexander also worked in the apartment's leasing office. On the morning of August 17, 2017, Alexander escorted her daughter to the bus stop to catch the school bus. While waiting for the bus, Alexander approached Jackson, introduced herself, and mentioned that she worked in the leasing office. Recognizing a boy that was "straggling behind," Alexander asked Jackson if the child was her son. (Transcript Vol. II, p. 7). Jackson confirmed that he was, and at that point, Alexander stated, "it has been brought to our attention in the office that [your] son, . . . [has] been one of the kids in the apartment complex that had been causing trouble." (Tr. Vol. II, p. 8). Upset with the statement, Jackson's "tone and demeanor" changed, and she became confrontational. (Tr. Vol. II, p. 8). To remove herself from the situation, Alexander walked away and proceeded to her apartment to retrieve

her wallet since she wanted to go to the gas station and fuel her car. When she exited her apartment, she met Jackson standing outside her door. Having no prior interactions with Jackson, Alexander was "kind of in shock," as to how Jackson knew where she lived. (Tr. Vol. II, p. 12). Alexander ignored Jackson and walked toward her vehicle, but Jackson followed her yelling insults such as the "B-word." (Tr. Vol. II, p. 12). Jackson also threatened to beat Alexander. When Alexander got inside her vehicle, Jackson blocked her exit. After honking her car horn for a sustained period, Jackson finally got out of the way. On her way out of the apartment complex, Alexander flagged the complexes' security officer and informed him of the verbal altercation she had just had with Jackson. Knowing that Jackson was not a resident at the complex, Alexander ordered the security officer to evict Jackson upon sight. After issuing the instructions and before proceeding to the gas station, Alexander drove by her apartment to ensure that Jackson was not causing more trouble.

[5] On her way out of the apartment complex, Alexander saw Jackson outside the leasing office "waving her hands like she was explaining something to the maintenance supervisor." (Tr. Vol. II, p. 14). Alexander pulled in to the leasing office driveway, parked her vehicle, and exited. Upon seeing Alexander, Jackson began "saying things," but Alexander ignored Jackson's statements. (Tr. Vol. II, p. 15). As Alexander reached for the leasing door handle, Jackson "grabbed" Alexander's "long braids" which caused Alexander to fall on the concrete pavement. (Tr. Vol. II, p. 15). Jackson then jumped on Alexander, and the two wrestled. When the fight was over, Alexander realized

that her head was bleeding. Alexander went to the emergency room for treatment. From the altercation, Alexander had sustained a head laceration and several cuts on her body. Also, Alexander had a large patch of hair missing from the back of her scalp. At the hospital, law enforcement officers spoke with Alexander, and she reported the incident.

[6] On September 28, 2017, the State filed an Information, charging Jackson with battery, a Class A misdemeanor. On March 8, 2018, a bench trial was conducted. At the close of the evidence, the trial court found Jackson guilty as charged. The same day, the trial court sentenced Jackson to 365 days with 349 days suspended to non-reporting probation. Also, the trial court ordered restitution in the amount of $2,018.25 to cover Alexander's medical expenses, and a no-contact order against Jackson for 349 days.

[7] Jackson now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[8] Jackson contends that the State failed to present sufficient evidence to sustain her conviction and to rebut her claim of self-defense. When a defendant challenges the State's sufficiency of the evidence to rebut a claim of self-defense, the standard of review remains the same as for any sufficiency of the evidence claim. *Miller v. State*, 720 N.E.2d 696, 699 (Ind. 1999). When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh the evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1005, 1005 (Ind. 2009). "We consider only the evidence supporting the

judgment and any reasonable inferences that can be drawn from such evidence." *Id*. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*. The evidence need not be so overwhelming as to overcome every reasonable hypothesis of innocence. *Drane v. Scott*, 867 N.E.2d 144, 147 (Ind. 2007). The trier of fact is entitled to determine which version of the incident to credit and is the sole judge of the effect that any discrepancies or contradictions might have on the outcome of the case. *Scott v. State*, 867 N.E.2d 690, 695 (Ind. Ct. App. 2007), *trans. denied*.

[9]  To convict Jackson of battery as a Class A misdemeanor, the State was required to establish beyond a reasonable doubt that Jackson knowingly or intentionally touched Alexander in a rude, insolent, or angry manner and that such touching resulted in bodily injury. *See* I.C. § 35-42-2-1(d)(1). Jackson does not argue that the State failed to prove any of the requisite statutory elements of the battery charge; rather, she contends that the State failed to disprove her claim of self-defense.

[10]  Self-defense is a legal justification for what would otherwise be a criminal act. *Tharpe v. State*, 955 N.E.2d 836, 844 (Ind. Ct. App. 2011), *trans. denied*. To prevail on a claim of self-defense, Jackson must present evidence that she: (1) was in a place she had a right to be, (2) did not provoke, instigate, or participate willingly in the violence, and (3) had a reasonable fear of death or great bodily harm." *Id*. When a defendant claims they acted in self-defense, the State has the burden to disprove at least one of these elements beyond a reasonable

doubt. *See id*. The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief. *See Miller*, 720 N.E.2d at 700.

[11] In support of her argument, Jackson relies on the testimony she gave at her bench trial. Specifically, Jackson testified that after the confrontations at the school bus stop and outside Alexander's apartment, she went to the leasing office to complain about Alexander's inappropriate behavior. Jackson claimed that while she was waiting outside the leasing office, Alexander pulled into the leasing driveway and walked toward her yelling epithets. Jackson then asserted that Alexander "struck" her in her "gut" and tried to "strike" her in the left eye. (Tr. Vol. II, p. 33). In her appellate brief, Jackson argues, "[w]hy would [she] start a fight with an employee of the complex right in front of security? It is far more likely that [Alexander] started the fight." (Appellant's Br. p. 10).

[12] Notwithstanding Jackson's argument, we find that the situation presented before us is a classic 'she said – she said' scenario in which we only have two witnesses—Alexander and Jackson—who describe two completely different events. The trial court heard each woman's narrative of the altercation, and based on the evidence, the trial court chose to believe Alexander over Jackson. "It is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve." *Ferrell v. State*, 746 N.E.2d 48, 51 (Ind. 2001). By finding Jackson guilty after hearing all the evidence, the trial court credited Alexander's testimony, and Jackson's claim of self-defense was

therefore refuted. As such, we decline to disturb the verdict and affirm Jackson's conviction.

# CONCLUSION

[13] For the reasons stated, we hold that the State presented sufficient evidence beyond a reasonable doubt to support Jackson's battery conviction and to rebut her claim of self-defense.

[14] Affirmed.

[15] Vaidik, C. J. and Kirsch, J. concur