## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 29 2015, 8:57 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John Taylor,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 29, 2015

Court of Appeals Case No.
49A05-1504-CR-151

Appeal from the Marion Superior Court

The Honorable Mark Stoner, Judge

Trial Court Cause No.
49G06-1311-FA-75100

**Robb, Judge.**

# Case Summary and Issues

[1] Following a bench trial, John Taylor was convicted of murder and Class C felony robbery. He raises two issues for review, which we restate as: (1) whether the State presented sufficient evidence to rebut his claim of self-defense; and (2) whether the State presented sufficient evidence to support his conviction for robbery. Concluding the State presented sufficient evidence to rebut Taylor's claim of self-defense and to support his conviction for robbery, we affirm Taylor's convictions.

# Facts and Procedural History

[2] For several months prior to November 2013, Taylor stayed with his cousin, Barbara Evbagharu, at her apartment in Indianapolis. Evbagharu permitted Taylor to stay on her couch, and he resided there intermittently. In early November 2013, Evbagharu also permitted Taylor's stepfather, Charles Wade, to stay at her apartment. On the evening of November 15, 2013, Evbagharu, Wade, and Taylor invited LeeAdrian Rutland to the apartment in order to buy crack cocaine from him. The exchange was completed, Rutland departed, and Wade, Taylor, and Evbagharu smoked the crack cocaine. After they finished smoking crack, Evbagharu departed, leaving Wade and Taylor alone in the apartment.

[3] Around 11 p.m. that evening, Rutland picked up his brother from work, and they drove back to Evbagharu's apartment to sell more crack cocaine to Taylor

and Wade. When Rutland entered the apartment, Wade spoke with Rutland while Taylor waited in Evbagharu's bedroom. A few moments later, a fight ensued between Wade and Rutland. Taylor then emerged from the bedroom, saw Wade on top of Rutland with Rutland's arms pinned, and began to assist Wade. Taylor stabbed Rutland in the leg with a knife, choked him, beat him with his fists, and pummeled him in the head with a crystal ashtray. Taylor struck Rutland so hard with the ashtray that it broke and cut Taylor's hands. With Rutland unconscious, Wade and Taylor rifled through Rutland's pockets and removed a bag of crack cocaine, money, and a cell phone. Wade then wrapped a black cord around Rutland's neck and hands. Initially, Taylor and Wade planned to steal Rutland's car for their getaway, but when they went outside, they saw Rutland's brother waiting in the car so they fled on foot. Wade then sold Rutland's cell phone at a pawn shop, planning to use the proceeds to buy bus tickets to Louisville, Kentucky. However, once they had the money, the men instead bought more crack cocaine and smoked again. The men slept in an abandoned apartment building until the next morning when Wade called his brother to give them a ride to Louisville.

[4] After Evbagharu's neighbors reported a possible altercation, officers from the Indianapolis Metropolitan Police Department ("IMPD") were dispatched to Evbagharu's apartment. When Officer Michael Harman arrived at the scene, he heard heavy, labored breathing from inside the apartment and observed blood on the doorknob. Officer Harman kicked in the door and found Rutland

lying on the floor of the apartment, unresponsive and bleeding. Rutland was transported to Eskenazi Hospital where he died on December 4, 2013.

[5] On November 19, 2013, Taylor returned to Indianapolis and turned himself in to the police. Taylor spoke with IMPD Detective John Green. In that interview, Taylor admitted stabbing Rutland in the leg, choking him, and striking him in the head with an astray. Taylor also told Detective Green that Wade took a bag of crack cocaine and a cell phone from Rutland. He stated that he and Wade consumed the cocaine and then used the money gained from pawning the cell phone to buy more cocaine.

[6] The State initially charged Taylor with attempted murder and robbery, both Class A felonies. Following Rutland's death, the State amended the charging information to add an additional count of murder. Taylor chose to waive his right to a jury trial, and a bench trial began on March 2, 2015. At trial, Taylor testified to his version of the events and claimed he acted in self-defense. Taylor testified that after smoking crack cocaine with Wade and Evbagharu, he went into Evbagharu's bedroom, began drinking alcohol, and passed out. Taylor claimed he awoke to the sounds of two people fighting in the front room of the apartment and acted to help Wade. Taylor testified that when he entered the room, Wade was on top of Rutland and Wade said, "Help me . . . . He's reaching for something." Transcript at 313. Because Rutland was a drug dealer, Taylor assumed it was a gun. However, the police found no weapons on Rutland, and Taylor admitted that he had never seen Rutland with a weapon.

[7] At trial, the State entered Rutland's cell phone into evidence, which the IMPD recovered from a local pawn shop. The State also presented the testimony of Dr. Joy Carter, Chief Forensic Pathologist for the Marion County Coroner's Office. Dr. Carter testified Rutland sustained multiple sharp force injuries to his legs, thighs, left ankle, right flank, and arms; contusions and abrasions to his neck; gaping lacerations and tears to his scalp; extensive bruising and swelling to his face; and lacerations on his right and left hands. Dr. Carter testified that the wounds on Rutland's hands were consistent with defensive movements, and that Rutland sustained at least four separate impact sites of blunt force trauma to the head. She ruled the cause of Rutland's death to be complications from multiple blunt traumatic injuries to the head.

[8] The State also presented the testimony of Jeremy Bullock, a prisoner in the Marion County Jail at the same time as Taylor. Bullock testified that he and Taylor discussed Taylor's situation, and Taylor stated he and his stepfather intended to rob Rutland, but the situation "got out of hand." *Id.* at 215. Taylor was supposed to wait in the bedroom, and once Wade determined that Rutland had a "significant amount of drugs," Wade would instigate a fight and Taylor would emerge from the back bedroom to help him.[1] *Id.* at 216.

---

[1] We note that the trial court expressed its general skepticism of jailhouse testimony and reached its verdict entirely independent of Bullock's testimony. The trial court considered Bullock's testimony corroborating evidence that was not critical to the verdict.

The trial court found Taylor guilty of murder and Class C felony robbery. Taylor was sentenced to fifty years for murder and eight years for robbery. The trial court ordered the sentences to run concurrently.

# Discussion and Decision

## I.    Standard of Review

When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. *Id*. We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*. at 146-47 (citation omitted). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id*. at 147 (citation and alteration omitted).

## II.  Self-Defense

At trial, Taylor claimed that he acted in self-defense, and on appeal, he argues that the State failed to present sufficient evidence to rebut that claim. A challenge to the sufficiency of the evidence to rebut a claim of self-defense is reviewed using the same standard as for any claim of insufficient evidence. *Carroll v. State*, 744 N.E.2d 432, 433 (Ind. 2001). Self-defense is a legal justification for an otherwise criminal act. *Miller v. State*, 720 N.E.2d 696, 699 (Ind. 1999). Under Indiana law, a person is justified in using deadly force and

does not have a duty to retreat "if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person . . . ." Ind. Code § 35-41-3-2(c). In order to prevail on a claim of self-defense, Taylor must show: (1) he was in a place where he had a right to be; (2) he did not provoke, instigate, or participate willingly in the violence; and (3) he had a reasonable fear of death or great bodily harm to himself or Wade. *Wilcher v. State*, 771 N.E.2d 113, 116 (Ind. Ct. App. 2002), *trans. denied*. Once a defendant claims self-defense, the State bears the burden of disproving at least one of these elements beyond a reasonable doubt to overcome the defendant's claim. *Miller*, 720 N.E.2d at 700. The State may meet its burden by directly rebutting the defense, by affirmatively showing the defendant did not act in self-defense, or by relying upon the sufficiency of the evidence in its case-in-chief. *Id*. Whether the State has met its burden is a question of fact for the fact-finder. *Id*.

[12] We agree with the trial court that the State has negated at least one element of Taylor's self-defense claim—that Taylor had a reasonable fear of death or great bodily harm to himself or Wade. The evidence favorable to the judgment, including Taylor's own testimony, shows that when Taylor emerged from the bedroom, Wade had Rutland pinned to the ground. Moreover, the only evidence to support Taylor's claim that he feared Rutland was reaching for a gun is his own self-serving testimony, which the trial court is not required to believe. *See Fitzgerald v. State*, 26 N.E.3d 105, 110 (Ind. Ct. App. 2015). No gun was recovered by the IMPD, and Taylor testified that he never saw, or knew, Rutland to carry a gun. Furthermore, no evidence was presented of any injuries

or bodily harm to Wade; nor was there any serious bodily injury to Taylor. Thus, the trial court could reasonably infer that the State proved Taylor's fear of death or serious bodily injury was not reasonable.

[13] Even if Taylor was entitled to use self-defense, the amount of force used was out of proportion to the requirements of the situation. *See Geralds v. State*, 647 N.E.2d 369, 373 (Ind. Ct. App. 1995) ("[T]he force used must be proportionate to the requirements of the situation. Where a person has used more force than is reasonably necessary . . . the right of self-defense is extinguished . . . .") (citation omitted), *trans. denied*. We have previously held the extent and severity of the victim's injuries are relevant in determining whether the degree of force exerted by the defendant was reasonable. *Martin v. State*, 784 N.E.2d 997, 1006 (Ind. Ct. App. 2003). Here, the State's medical evidence showed that Rutland, while being held down by Wade, sustained injuries on almost every part of his body, including his legs, ankles, arms, hands, neck, and head. Although Taylor testified he only struck Rutland with the ashtray one time, the medical evidence shows Rutland suffered at least four blunt force impacts to the head. Due to the nature and extent of Rutland's injuries, the trial court could have reasonably concluded Taylor's use of force against Rutland was not reasonable.

[14] For all of these reasons, we conclude the State presented sufficient evidence to rebut Taylor's claim of self-defense. His argument to the contrary is simply a request for us to reweigh the evidence and reassess the credibility of the witnesses, which we will not do. *See Drane*, 867 N.E.2d at 146.

# III. Robbery

Taylor also contends there was not sufficient evidence to support his conviction for robbery "[b]ecause the evidence is not sufficient to disprove self-defense [and] there was no proof of force beyond that exerted in defense of another." Brief of Appellant at 13. However, we have already determined the State rebutted Taylor's claim of self-defense. To convict Taylor of robbery as a Class C felony, the State must have proved beyond a reasonable doubt that Taylor: (1) knowingly or intentionally; (2) took property from another person or from the presence of another person; (3) by using or threatening the use of force on any person or by putting any person in fear. Ind. Code § 35-42-5-1 (1984). Here, the State presented evidence that immediately after Taylor beat Rutland until he lost consciousness, Taylor and Wade rifled through Rutland's pockets and took a bag of crack cocaine, money, and a cell phone. This is sufficient evidence to show Taylor knowingly took property from Rutland by using force.

# Conclusion

The evidence presented at trial was sufficient to support Taylor's conviction for robbery and to rebut his claim of self-defense. Taylor's convictions are therefore affirmed.

Affirmed.

Vaidik, C.J., and Pyle, J., concur.